SCHNECK, by Guardian *ad litem,* and another, Respondents, v. MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Appellant.

TOWLE, by Guardian *ad litem,* and another, Respondents, v. SAME, Appellant.

BRANDT, by Guardian *ad litem,* and another, Respondents, v. SAME, Appellant.

*April 1—April 28, 1964.*

For the appellant there was a brief by *Smith, Puchner, Tinkham & Smith* of Wausau, and oral argument by *Richard P. Tinkham*.

For the respondents there was a brief by *Kelley & Maeder* of Wausau, for the Brandts, and *Walter A. Graunke* of Wausau, for the Schnecks, and *Crooks & Crooks* of Wausau, for the Towles, and oral argument by *Mr. Jerome A. Maeder, Mr. Graunke,* and *Mr. Leo D. Crooks*.

BEILFUSS, J.   The principal issues are:

1. Is there sufficient credible evidence to sustain the verdict?

2. Was argument to the jury by plaintiffs' counsel so improper as to require a new trial?

*Sufficiency of the Evidence.*

The factual situation as it appears in the record before us is essentially the same as reported in the first appeal.  Briefly stated, the facts are: The plaintiff, Patricia Brandt, is the minor daughter of Frank Brandt.  In July of 1959, Patricia, then sixteen years old, received a temporary driving permit. In August of 1959, she received a driver's license.  During the time she had only the permit it is clear that both her father and her mother frequently told her she was not to allow any other person to drive the car.  The accident happened some nine months after Patricia had a driver's license.  The record

is not entirely clear as to the instructions given to her after she received her license.

After she had her license Patricia drove the car without her parents present about three or four times per week. On many of these occasions one or more of the minor plaintiffs would be with her, which fact was known to Frank Brandt. Several times Frank Brandt stated in the presence of Patricia and the other girls, "you girls drive careful, treat the car as if it were your own," or words to that effect.

Patricia acknowledged that during the permit period she was told several times not to let others drive the car but stated those restrictions were not repeated to her after she received the driver's license and that she thought the only admonition was to be careful and drive carefully.

It further appears that at no time did Frank Brandt specifically tell Patricia that it would be all right for others to drive. Patricia did not tell him that others were driving the car, although that was a fact, nor did he know Patricia was allowing others to drive.

Howard Johnson, an adjuster employed by the defendant Insurance Company, interviewed Mr. and Mrs. Brandt and Patricia shortly after the accident and took statements from them. The statements prepared by Mr. Johnson and signed by Brandt indicate that Brandt, on many occasions, instructed Patricia that she was not to allow others to drive. Neither Brandt nor his wife recall that she was so instructed on the day of the accident.

The testimony of Mr. Piehler, an attorney consulted by Mr. Brandt, and Mr. Peterson, an insurance adjuster for another company, corroborate the statements taken by Johnson but neither of them refer specifically to the instructions given to Patricia on the day in question.

In our first opinion [1] we stated (p. 575) :

---

[1] *Schneck v. Mutual Service Casualty Ins. Co.,* supra.

"The jury apparently took the plaintiffs' view of the evidence. The finding might be inferred from the evidentiary facts that the last time Patricia Brandt was told not to let others drive the car was during her learning period some nine months before the accident, that she had driven the car 30 or 40 times for her own pleasure without any express restrictions, she had been told to treat the car as her own, and on occasions Brandt had stated his daughter could use the car or 'you girls can use the car' but he wanted the girls to drive carefully. The defendant argues it is conceded Patricia had no express permission to permit others to drive her father's car and while he advised his daughter to treat the car as her own, this only meant that she should be careful. It is common knowledge a minor takes better care of his own property than he does of another's. There is evidence of the existence of an understanding of no permission and a conflict over the duration of the understanding.

"An issue was thus created of whether the course of conduct and the other circumstances which existed between the father and the daughter were such that, when on the day of the accident Mr. Brandt gave permission to his daughter to use the car, such permission was impliedly limited in that she was not to allow others to drive. We agree with the trial court that a jury issue was present. The defendant's motions for directed verdict and to dismiss were properly denied."

While the greater weight of the evidence can easily if not irresistibly lead us to the conclusion that Brandt did not give implied permission to Patricia to allow others to drive, the law of the case is that the facts create a jury issue.[2] Rules needing no citation are that credibility of witnesses and the weight of their testimony as a whole is for the jury, and that if there is any credible evidence which supports the verdict it

---

[2] Upon the record in the former appeal, *Schneck v. Mutual Service Casualty Ins. Co., supra,* we held the factual dispute was a jury issue. In the record on this appeal the facts were substantially the same. We do not mean to imply that if there had been a substantial variance in the facts the trial judge could not have taken the case from the jury.

must be sustained. A comprehensive discussion of rules of implied permission appear in *Krebsbach v. Miller* (1963), 22 Wis. (2d) 171, 125 N. W. (2d) 408.

The statement "you girls can use the car" but be careful, and lack of evidence of restrictive instructions on the day in question, together with uncertainty as to instructions to Patricia after she received her driving license and her testimony as to her understanding that the instruction not to let others drive did not apply after she had her license constitute sufficient credible evidence. The jury could draw the inference that there was no implication that Patricia was not to permit others to drive on the day in question.

The juries in both cases resolved the issue in favor of the plaintiffs. We cannot as a matter of law set aside that finding.

### Arguments of Counsel.

The defendant contends that the arguments of Mr. Maeder and Mr. Graunke on behalf of the plaintiffs were improper, grossly prejudicial and inflammatory; that they affected the jury and that a new trial should be ordered because of these arguments.

The arguments objected to generally refer to the defendant Insurance Company and its adjuster, Mr. Johnson. It is the position of the plaintiffs that they had a right to attack the credibility of Mr. Johnson as an agent of an interested party and his methods and motives in obtaining the statements from Mr. and Mrs. Brandt and Patricia. It is their contention that Mr. Johnson's purpose was to obtain only such information as would negate permission.

Mr. Maeder stated to the jury in connection with the statement of Patricia:

"Now let's remember this little girl, young girl in a cast from a terrible accident—one of her girl friends killed in the accident. She hadn't thought about it for a month, lying

there with one arm fractured, right leg fractured and both wrists broken—"

Excerpts from Mr. Graunke's argument, objections, and statements of the court are:

"Now I'll tell you the crux of this whole case, who has got the financial interest in this case, and I have a right to use it because they offered this Exhibit C in evidence. The financial interest in this case is on the part of the insurance company.

"Mr. Tinkham: Object to this line of argument. I think it is entirely improper. It doesn't bear upon the issues and it is prejudicial and improper.

"The Court: The insurance company was not a witness in the case.

"Mr. Graunke: But their exhibit is in and it was received and the statement, the amount of the policy coverage. I would like my time taken out.

"The Court: You will have plenty of time without this time.

"Mr. Tinkham: I point out to you the statement you are referring to is the statement taken by Mr. Peterson of Home Mutual.

"Mr. Graunke: But it's your exhibit, you offered it.

"The Court: A statement signed by Mr. Brandt that you are referring to?

"Mr. Graunke: But he offered it.

"The Court: Proceed. The court takes this opportunity to instruct the jury that whether an insurance company is a party to this action or not is entirely immaterial. You have your duty to perform without regard to the persons who are parties to the action. Proceed, Mr. Graunke.

"Mr. Graunke: We respectfully submit that the defendant insurance company is a party to this action and has a greater financial interest than anybody involved in this case, all three of the girls put together. . . . That is the only answer you can give under the facts of this case in my opinion. That is 'Yes,' and show to this defendant once and for all that we have intelligent jurors in Marathon county that aren't going to be

bam-boozled by the hocus-pocus of insurance adjusters. In all my life and years of experience as an attorney at law and they are more years of experience than any attorney at law and they are more years of experience than any attorney seated at the counsel table here today and all the many years I have practiced law as Marathon county district attorney, and in my many years of the practice of the law, never in my opinion have I seen a case that so chills the marrow of the bones of anyone who believes in justice and fair play. They really tried to take Frank Brandt for a real good ride, these insurance adjusters. Listen to this—this is in the record. On cross-examination of Mr. Howard Johnson I asked him the following question and he made the following answer: 'In other words, to make a long story short, Mr. Johnson, your whole purpose of this questioning of Miss Patricia Brandt was to work out a record to show that there was no coverage in this case; isn't that right? *A.* That was part of it, yes.' He admitted when he answered that question which I asked him on cross-examination that he was trying to work out a record here to beat these four girls out of their recovery to which they are entitled under the terms of the policy.

"Mr. Tinkham: Object to this, Your Honor, as improper argument. Recovery by these girls is entirely outside the issues of this case and is injected for prejudicial effect which I ask the jury be instructed to disregard.

"The Court: Mr. Graunke, I am going to ask you to be careful not to engage in any prejudicial argument.

"Mr. Graunke: Now we got another proposition. He starts out reading the law books when he has nothing else to say to the jury. The judge will read the instructions to you and tell you what the law is. Part of the law is this. That it does not require—the insurance company coverage does not require that the driver be licensed. . . . Justice for these three girls here in this particular case. Their testimony is not impeached, regardless of what the papers and statements he has got here —with our experience as attorneys at law we have seen so many of these statements that when a client comes to the office now the standard procedure is and the instructions are when any insurance company comes to your door, insurance adjuster, sign nothing, say nothing, do nothing. Take the broom stick and chase them out.

"Mr. Tinkham: I have to object to this line of argument. I think it is entirely improper.

"Mr. Graunke: I said that is what the opinion is.

"The Court: Proceed and discuss the evidence.

"Mr. Graunke: You know that they get these poor suckers to sign anything. I'll bet they could get them to sign a paper with the motion that they should be hung by the neck until dead the next morning at sunrise. . . . The only reason both of these adjusters went over there to get these statements was so that they could get their respective insurance companies off the hook. (Whereupon Mr. Graunke read the special verdict.) Ladies and gentlemen, in truth and fairness and justice and under the evidence in this case this question can only be answered one way, and that is 'Yes.' Mr. Howard Johnson, the insurance adjuster for the defendant insurance company, what a job of adjusting he did. Just remember this question I asked him in which he admitted that his purpose was to go over and get the statement from Brandt to build up a record so that Brandt was not covered by insurance by his own insurance company. That is a fine how do you do, when you pay big insurance premiums and then you find out instead of making a lawsuit you wind up in a lawsuit with your own insurance company.

"Mr. Tinkham: I object to this line of argument.

"The Court: No question about the fact as to Mr. Brandt being protected by the insurance company or any suit may be brought against him. There is no lawsuit being brought against Mr. Brandt.

"Mr. Graunke: Then here is another thing to be considered. Ladies and gentlemen of the jury, these three girls, Sandra Schneck, Pat Brandt Raymond and Lynnette Towle are not bound by anything that Mr. Frank Brandt said in the first place. They are not bound by anything. They still have the protection of the law. What if Frank Brandt had said anything out of line which we don't concede? These three girls, their rights are not bound by that. . . . so regardless of any so-called hocus pocus statement they have in evidence here, these girls had a right to rely on what Mr. Frank Brandt told them—'go ahead and use the car, Pat. Go out and have a good time with the girls. Use it as your own. Drive safely.' Therefore, to protect the innocent in this case

this question can only be answered one way—'Yes.' How would you like to be involved in an auto case and then somebody that doesn't analyze the case make a statement that would wipe you out of your rights? Why that is ridiculous. These girls' rights are independent of whatever Frank Brandt said in the papers because he told—

"Mr. Tinkham: Object to this line of argument. I think it is improper.

"The Court: Mr. Graunke, I am going to admonish you to confine your argument to the issues in this case. You have been transgressing and going beyond the issues in this case.

"Mr. Graunke: These girls are not governed by what Frank Brandt told them."

In the case of *Roeske v. Schmitt* (1954), 266 Wis. 557, 572, 64 N. W. (2d) 394, it was held:

"Certain rules have been laid down and expressions made by this court which must be considered in determining whether the remarks made by counsel constitute prejudicial error requiring a new trial: (1) Since enactment of sec. 260.11, Stats., which provides that an insurer of an automobile is a proper party defendant in an action brought on account of a claim against the insured and may be sued without joining the assured, as is the case here, it is not improper to call attention to the insurer's interest in the result of the trial. *Doepke v. Reimer,* 217 Wis. 49, 258 N. W. 345; *Balzer v. Caldwell,* 220 Wis. 270, 263 N. W. 705; (2) it must affirmatively appear that the remarks operated to the prejudice of the complaining party, *Lehner v. Chicago, M., St. P. & P. R. Co.* 204 Wis. 558, 236 N. W. 572; it cannot be presumed that the party complaining has been injured by them, *Bartlett v. Clough,* 94 Wis. 196, 68 N. W. 875; (3) however improper remarks of counsel are, it is necessary to find some affirmative evidence of their prejudicial effect in order to reverse the judgment. Sec. 274.37; *Standard Accident Ins. Co. v. Runquist,* 209 Wis. 97, 244 N. W. 757; (4) where, at most, the remarks of counsel may have affected the jury in its consideration of the question of damages, they do not require a new trial, *Ninneman v. Schwede,* 258 Wis. 408, 46 N. W. (2d) 230; (5) the excessiveness

of an award of damages is considered as evidence that passion and prejudice have influenced it, and quite likely influenced the verdict on the issues, *Hanley v. Milwaukee E. R. & L. Co.* 220 Wis. 281, 263 N. W. 638; but the absence of an attack upon the award is significant in considering the asserted error, *Doepke v. Reimer, supra;* (6) when the verdict merely resolves what has been held to be a jury question, particularly where the award of damages does not reflect the result of remarks of counsel, the court can only speculate upon the possible result of the remarks. *Standard Accident Ins. Co. v. Runquist, supra;* (7) 'Where remarks have a clearly prejudicial tendency, the fact of prejudice usually is indicated by an excessive or inadequate award of damages or by findings that are against the weight of the evidence, and where the findings of the jury seem to be in accordance with the preponderance of the evidence and the damages assessed are moderate, it cannot ordinarily be said that the argument resulted in prejudice.' *Plautz v. Kubasta,* 237 Wis. 198, 207, 295 N. W. 667."

A majority of the members of the court are of the opinion that the argument of Mr. Graunke taken as a whole is inflammatory and highly prejudicial. Prejudicial and inflammatory arguments usually reflect themselves in excessive damage verdicts. In this instance damages were not at issue. However, we have determined that the verdict, although based upon credible evidence, is against the greater weight of the evidence. Under these circumstances the majority of the members of this court are of the opinion that the prejudicial and inflammatory arguments of counsel did affect the minds of the jury and that it was an abuse of judicial discretion not to order a new trial. The court is not unmindful of the fact that there have been two trials and two verdicts favorable to the plaintiffs and that still a third trial is ordered. While we regret this necessity, the argument to the jury was within the control of plaintiffs' counsel and they cannot be heard to complain of the hardship of a new trial occasioned by their own actions. As to plaintiffs and counsel not involved in the

prejudicial argument, they reaped the benefit and must likewise bear the burden of a new trial.

The writer of this opinion and Mr. Justice DIETERICH disagree with the majority as to the prejudicial character of the argument and would affirm the judgments of the trial court.

Counsel had a right in argument to attack the credibility of the testimony of Mr. Johnson; they had a right to argue the interest of the Insurance Company and the motives Mr. Johnson as an agent may have had in obtaining the statements.

While we agree that the argument was improper and inflammatory and should not have been made, we cannot agree that the trial judge abused his judicial discretion in not ordering a new trial. This court should not reverse his determination unless it clearly appears that it was an abuse of discretion. It should not merely substitute its discretion for his. The trial court is in a superior position to evaluate the argument as a whole; the manner and demeanor of delivery; the demeanor and responsiveness of the jury; and the probable prejudicial effect.

The case was heard by an able and distinguished trial judge with many years of experience in jury trials. In his consideration of the matter upon hearing of motions after verdict, he stated:

"I feel that the interpolations on the part of the court during the time of counsel's argument, which I observed the court reporter was taking down in its entirety, adequately pointed out the court's view with respect to the question submitted. I feel that in this type of a trial wherein the entire case is not submitted, but only the question which deals with the coverage under the policy of insurance, presents a different situation than a case in which the defendant is being sued for damages and the question of liability and damages are all presented to the court and to the jury.

"In this case it is only a question which relates to the coverage that is presented to the jury and although in the ordinary case statements of counsel with respect to the fact that a large insurance company is involved or the insurance company has millions, so on and so forth, would not be tolerated, here the situation is a little different in that respect. Particularly in view of the fact that the integrity and the responsibility of the insurance company's agent was in question. Therefore, it would be proper to point out to the jury that the insurance company was trying to avoid liability in this case because of the large amount of damages. Now although the question of damages was not a question before the jury and was not litigated in this trial and strictly according to the rules of procedure the question should not be referred to at least at length to the jury, in detail to the jury, still when we consider whether or not the insurance company's agent might have been tempted to conduct himself in a manner that should not be tolerated, it is proper, I think, for counsel to let the jury know that this was not a little case in which it would not be expected that the agent for the insurance company might engage in practices that were not strictly honorable but rather that it was a very important case damage-wise which might tempt one in his position to take unfair advantage of the parties with whom he was dealing. Now by that I am not making any insinuation that the insurance company's agent did engage in such practices. However, counsel for certain of the plaintiffs took that position and argued that to the jury and I think that the court restricted counsel's arguments as much as I had a right to restrict it and made sufficient references to counsel's argument being somewhat improper so that I do not believe the jury was in any way improperly or in any way influenced by any improper argument. It is always a matter of great concern on the part of the court as to how far the court should exercise its prerogative to restrain counsel from making exaggerated claims and improper argument. The court must rule of course when objection is made but, ordinarily, a reference to the fact that the argument is improper is sufficient to keep the matter under control to avoid an improper result. I do not believe in this case that any argument was used which improperly

influenced the jury nor do I believe that any evidence was introduced which was not material to the issues and which improperly affected the results of the trial."

I cannot conclude that there was an abuse of judicial discretion and would affirm the judgments of the trial court.

*By the Court.*—Judgments reversed, new trial granted.

DIETERICH, J., dissents.
BEILFUSS, J., dissents from the result.