CHEVRON CHEMICAL COMPANY, Plaintiff-Respondent-
Petitioner-Cross Petitioner,

FIRST BRANDS CORPORATION, Plaintiff,

v.

DELOITTE & TOUCHE, Defendant-Appellant-Petitioner.

Supreme Court

*No. 91-0470. Oral argument March 30, 1993.—Decided June
16, 1993.*

(Also reported in 501 N.W.2d 15.)

936

For the defendant-appellant-petitioner there were briefs by *John W. Hein, David J. Edquist* and *Gibbs, Roper, Loots & Williams, S.C.,* Milwaukee and *Genevieve Harris Roche* and *Deloitte & Touche,* New York, NY, of counsel and oral argument by *Mr. Hein.*

For the plaintiff-respondent-petitioner-cross petitioner there were briefs by *David L. DeBruin, Patrick J. Schott* and *Kravit, Gass & Weber, S.C.,* Milwaukee and oral argument by *Mr. DeBruin.*

Amicus curiae brief was filed by *L. William Staudenmaier* and *Cook & Franke, S.C.,* Milwaukee and *Louis A. Craco, Russell G. Ryan* and *Willkie Farr & Gallagher,* New York, NY, of counsel for the American Institute of Certified Public Accountants.

LOUIS J. CECI, J.   This case comes before the court on Chevron Chemical Company's (Chevron) petition and cross-petition for review and Deloitte and Touche's (Deloitte) petition for review of a court of appeals decision, *Chevron Chemical v. Deloitte & Touche,* 168 Wis. 2d 323, 483 N.W.2d 314 (Ct. App. 1992). The court of appeals affirmed in part and reversed in part a judgment of the circuit court for Milwaukee County, Patricia D. McMahon, Circuit Judge. The issue is whether the entry of judgment as a sanction against Deloitte is appropriate. We conclude that it is and remand for a hearing on damages.

Deloitte performed an audit of the December 31, 1985, financial statements of American Fuel and Supply Company, Inc. (AFSCO). Subsequently, Deloitte discovered that, as a result of an AFSCO policy, the financial statements contained a material error of $900,000. The error caused AFSCO to appear to be making a profit when it was not. Deloitte did not notify Chevron, AFSCO's second largest trade creditor, that it had withdrawn its report on the 1985 financial statements. AFSCO later filed for bankruptcy.

Chevron sued Deloitte, alleging negligence in the performance of the audit. Chevron also alleged intentional and negligent misrepresentation.

The record in this case reveals aggravated, persistent, and contemptuous disregard of the orders and rules of the circuit court on the part of Deloitte. The unprofessional misconduct of counsel in using misleading, if not outright false, statements to the circuit court and in the presence of the jury is conduct that this court will not tolerate. The following examples are illustrative.

Four times during discovery, the circuit court imposed sanctions upon Deloitte. First, the circuit court granted Chevron's motion to compel discovery, awarding costs. The second instance involved Deloitte's failure to produce its audit manuals. The court imposed a third discovery sanction because Deloitte had brought a motion objecting to Chevron's editing videotape depositions. The circuit court denied the motion and ordered Deloitte to pay costs because Chevron had not requested to edit the tape. Finally, the court awarded Chevron costs for time counsel for Chevron had spent traveling to a deposition of an anticipated Deloitte rebuttal witness. Deloitte had attempted to cancel the deposition at a time when Chevron's counsel was already en route to the deposition.

At a pretrial hearing on October 8, 1990, Chevron requested that Mr. Nelson be brought to the trial as a live witness. Nelson was Deloitte's National Consultation Partner in New York City and the person who guided Deloitte's handling of the error in the financial statements. The court asked Deloitte's counsel whether Nelson would be brought to trial. Deloitte's counsel replied:

> No. And, Your Honor, we understand he's going in for major surgery, I believe, tomorrow or the next day and will be in the hospital for at least six weeks. We couldn't use him even if we wanted to.

The trial was to start in a week and was expected to last five weeks.

On the first day of trial, the court granted Chevron's request that witnesses be sequestered. Chevron later became concerned that Mr. Mannix, Deloitte's deputy general counsel and a Deloitte witness, was violating the sequestration order by reading the daily transcripts. The court clarified its general sequestration order and then allowed Mannix to read daily trial transcripts because counsel for Deloitte had argued it needed to confer with Mannix to be able to properly put on a defense. When Mannix testified, he said he had not been reviewing transcripts.

At one point during the trial, Chevron designated what portions of Mr. Nelson's deposition it intended to read to the jury. During that deposition, Nelson often could not recall events regarding the case. The next day at trial, Deloitte said that Nelson would be able to come to the trial.

When Nelson testified, he was able to recall events that had escaped him at the deposition. Nelson said he had had conversations with Mr. Wagner in which he was

reminded of what he had done and said. Wagner had previously testified for Deloitte and had listened to trial testimony as Deloitte's representative.

After Nelson testified, counsel for Chevron asked the court for permission to voir dire Nelson about his surgery and his availability to come to the trial. Chevron's counsel also pointed out to the court that it thought Nelson had been prepared through discussions with Wagner, in violation of the sequestration order.

Counsel for Deloitte explained that they had been advised that Nelson would be in the hospital for six weeks. Nelson had in fact had hernia surgery. Responding to the court's questions, Nelson testified that he had entered the hospital on the afternoon of October 4 and had been released the morning of October 6. He said his doctor had released him to go back to work on October 25 and had "suggested possibly not even traveling." The court then said it did not like games being played and "the games are over with." The court continued,

> Then I get a representation that Mr. Nelson's going to be in the hospital for six weeks. That's a serious representation. And it seems to me before you make that representation you ought to know it's true . . .. [T]his has been . . . an extraordinary day, and I didn't expect another extraordinary thing. I'm just real concerned about that.

The court then addressed whether the sequestration order had been violated. Mr. Nelson had not been exempted from the sequestration order, and the court was concerned because Nelson testified he had talked to Mr. Wagner within the last three days and that Wagner had reminded him of events. The judge said she saw Mr. Mannix looking at her "funny." The court asked Deloitte's counsel if he thought his conduct regarding the sequestration order had been appropriate. Deloitte's

counsel admitted that perhaps it had not been. Then, the court said:

> And I don't think it's funny . . .. I don't think it's funny at all.
>
> I think this is very serious. . . . You have a sequestration order. . . . There should be no discussions whatsoever. . . .
>
> And to say, 'He just reminded me of what I didn't remember,' how do you separate that from what Mr. Wagner recalls that he testified to on the stand? I don't know how. . . . That's why I say, this has been an extraordinary day. . . . I couldn't believe that I heard him say that he's even discussing all those notes and going over them with Mr. Wagner. That's not appropriate. . . . You just go ahead and ignore the order of this Court.

At another point in the trial, counsel for Deloitte referred to an exhibit, saying it was an article from the *Wall Street Journal.* Chevron objected and requested a jury instruction that there was no evidence of a *Wall Street Journal* article. A computer search failed to find such a *Wall Street Journal* article. Mr. Knox, Chevron's credit manager, later testified that he read the *Wall Street Journal* to keep track of news events regarding Chevron's significant debtors.

At still another point, counsel for Deloitte was examining Mr. Knox about an exhibit. When he came to a portion of the exhibit that had been redacted for reasons of attorney-client privilege, Deloitte's counsel said, "Now, there's a missing section here. In the original letter there was some content in there regarding AFSCO, wasn't there?" Chevron objected. A sidebar conference was held. The court instructed the jury that a portion of the document was missing because it related to a confidential communication with counsel.

Twice, Deloitte's counsel addressed Chevron's counsel in front of the jury and implied that Chevron had hidden documents. The first time was during the testimony of Mr. Knox. Knox had testified that he believed he had asked for an interim financial statement from AFSCO. Knox said he did not know whether he had made the request in writing. At that point, Deloitte's counsel turned to Chevron's counsel and said:

> If there is such a letter, we would like such a letter, counsel. We have asked for it. I see no such letter.

Chevron's counsel objected, and the court admonished Deloitte's counsel: "The questions are directed to the witness."

The second time Deloitte implied Chevron had hidden documents was during the testimony of Mr. Smith, another Chevron employee. Smith testified about a document, saying the one he had been shown was a copy, and the original had been sent to his supervisor. Deloitte's counsel responded by saying, "It's the only one we have received. . . . If there is another copy, counsel we want it right now. We have never gotten another copy. This is the only one that we know exists."

After the jury left, Chevron objected to Deloitte's conduct. Deloitte's counsel explained his actions, saying in part, "I thought unless I ask that question, made that comment in front of the jury, then the jury is under the impression that we have been holding back the documents rather than plaintiffs' counsel." The court again admonished Deloitte's counsel, this time more severely, saying it thought it had warned Deloitte's counsel about that type of conduct in front of the jury before.

The next morning, Chevron moved for entry of judgment as a sanction. Chevron had reviewed the transcript of the previous day and said it felt the transcript

did not adequately capture what had happened. According to Chevron, before Deloitte's counsel had asked Chevron's counsel for the document in front of the jury, Deloitte's counsel had turned around, looked at Chevron's counsel, and pointed his finger at him. The judge took a recess. When she returned, the judge said she was concerned about repeated violations but needed more time to review the issue and would take it under advisement.

The case went to the jury. The jury found that Deloitte was not negligent in performing the audit and that $715,000 would compensate Chevron on the negligence claim. The jury also found for Deloitte on the intentional and negligent misrepresentation claims. The jury made no findings as to what Chevron's damages on the misrepresentation claims were.

Chevron moved for judgment notwithstanding the verdict. The court granted Chevron's motion for judgment notwithstanding the verdict on the claim of negligent misrepresentation. The court also changed the jury's answer on the question on intentional misrepresentation from "no" to "yes" because there was no credible evidence to support the jury's answer. Saying there had been "clear and convincing" evidence that the damages Chevron sustained on the intentional and negligent misrepresentation claims were $1,646,106, the court granted Chevron's motion to change the jury's answers to these two questions from "N/A" to $1,646,106.

Next, the court addressed Chevron's motion for the entry of judgment as a sanction for Deloitte's misconduct. Noting that its prior rulings on the misrepresentation and damages issues were based on the record and the evidence, the court continued:

> But I will note that the entry of judgment as a sanction for counsel's misconduct would also be

> appropriate on this record. The record speaks for itself, and I won't attempt to be all inclusive, but . . . there were several areas of misconduct. Defendant concedes there was misconduct, but denies the impact on the jury. But the evidence of the impact is the verdict itself. That verdict is not sustained by the evidence in this case and is only explained as a result of misconduct.

The court then spoke of violations of the sequestration order, the "intentional misrepresentation as to the availability of Mr. Nelson"; repeated violations of a local rule governing arguments on objections; inappropriate outbursts; the leveling of charges against opposing counsel in front of the jury; and the mischaracterization of the contents of exhibits. The court then said:

> I recognize that granting judgment would have been a very drastic remedy, but drastic remedies are necessitated by repeated and flagrant disregard for court orders. The conduct on this record is sufficient to merit the granting of a new trial, but that would reward the defendant for misconduct. And here such a sanction is not necessary because the evidence sustains the verdict for the plaintiff.
> . . . My expectation is that attorneys follow the rules as established by the Court and the relevant statutory rules and procedures and, when counsel don't, that's not acceptable, and there must be sanctions for them.

The court of appeals affirmed the circuit court on the negligent misrepresentation claim, *Chevron,* 168 Wis. 2d at 339–40, but reversed the circuit court's entry of damages and remanded for a determination of damages. *Id.* at 342. The court of appeals concluded that because of its holding on the negligent misrepresentation issue, it did not need to address the issues of intentional

misrepresentation or the entry of judgment as a sanction. *Id.*

The first issue is whether the entry of judgment is appropriate as a sanction for Deloitte's repeated, flagrant, and intentional misconduct. We conclude that it is.

Deloitte initially asserts that the circuit court did not enter judgment as a sanction, and, therefore, Chevron has no right to appeal this issue. We have examined the circuit court's decision on motions after verdict. That opinion is somewhat ambiguous as to whether it was holding in the alternative that judgment would be entered as a sanction. The court of appeals commented that the circuit court had entered judgment as a sanction, but did not address the issue. *See Chevron,* 168 Wis. 2d at 330.

■ We may affirm lower courts' decisions on grounds that differ from those relied on below. *See Koestler v. Pollard,* 162 Wis. 2d 797, 809 n.8, 471 N.W.2d 7 (1991). *See also Mueller v. Mizia,* 33 Wis. 2d 311, 318, 147 N.W.2d 269 (1967); *Laffey v. Milwaukee,* 4 Wis. 2d 111, 115, 89 N.W.2d 801 (1958). Moreover, once a case is before us, we have discretion to review any substantial and compelling issue the case presents. *Univest Corp. v. General Split Corp.,* 148 Wis. 2d 29, 39, 435 N.W.2d 234 (1989).

There is a perception both inside and outside the legal community that civility, candor, and professionalism are on the decline in the legal profession and that unethical, win-at-all-costs, scorched-earth tactics are on the rise. *See generally Interim Report of the Committee on Civility of the Seventh Federal Judicial Circuit,* April 1991; Judge Thomas M. Reavley, *Rambo Litigators: Pitting Aggressive Tactics Against Legal Ethics,* 17 Pepp.

L. Rev. 637 (1990). The issue of the appropriateness of entry of judgment as a sanction after a jury has returned a verdict is an important one that is likely to recur. The parties have argued the issue of the propriety of sanctions and have devoted extensive space in their briefs to this issue. Therefore, regardless of whether the circuit court actually entered judgment as a sanction, in furtherance of our obligation to maintain professionalism and civility in the courts, we address the sanction issue.

The issue of whether the circuit court actually entered judgment as a sanction is important in at least one respect, however, because if it did we would review that decision under an erroneous exercise of discretion standard of review. *See Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991). We have thoroughly examined the extensive record in this case and have concluded, however, even under a *de novo* standard of review, the entry of judgment as a sanction is appropriate.

Improper attorney conduct harms not only the parties, but also the judicial system's effectiveness. *Johnson,* 162 Wis. 2d at 281–82. Additionally, it wastes the jurors' time and must lower their estimation of the legal profession and the judicial process.

■

Sanctions for attorney misconduct both penalize the offender and deter future misconduct. *National Hockey League v. Met. Hockey Club,* 427 U.S. 639, 643 (1976); *Johnson,* 162 Wis. 2d at 282–83. The authority to impose sanctions is essential if circuit courts are to enforce their orders and ensure prompt disposition of lawsuits. *See id.* at 274.

■

Courts have statutory and inherent authority to impose sanctions for failure to comply with procedural

statutes or rules and for failure to obey court orders. *See id.* at 273-74. Chevron relies, correctly we believe, on the authority provided by secs. 805.03 and 804.12, Stats., and the inherent authority courts have to enter judgment as a sanction in a case like this.

We recently discussed an analogous sanction, that of dismissal of the plaintiffs' case. *Johnson,* 162 Wis. 2d 261. We held that dismissal may be imposed as a sanction regardless of whether the opposing party has been prejudiced by the noncompliance and regardless of whether the party is responsible for the noncompliance of its attorney. *Id.* at 266. We noted that because the sanction of dismissal is harsh, it should not be considered in the absence of egregious behavior. We said we would uphold dismissal as a sanction if there is a reasonable basis for determining that the noncomplying party's conduct is egregious and there is no clear and justifiable excuse for the party's noncompliance. *Id.* at 274-75.

Like dismissal, the entry of judgment as a sanction after a verdict has been returned is a harsh penalty. It should not be considered unless there is a reasonable basis for determining that the noncomplying party's conduct is egregious and there is no clear and justifiable excuse for the party's noncompliance. It should be imposed only under extraordinary circumstances.

Deloitte does not argue that courts do not have the power to enter judgment as a sanction. However, Deloitte correctly points out that there was a jury verdict in this case and that we do not lightly disturb jury verdicts. Deloitte points to cases such as *Schneck v. Mutual Service Cas. Ins. Co.,* 23 Wis. 2d 649, 128 N.W.2d 50 (1964), arguing that to impose sanctions in this case we must be convinced the misconduct operated to the prejudice of the complaining party. The circuit court

947

judge made it clear that Deloitte's misconduct prejudiced Chevron. She said the verdict was not sustained by the evidence and could only be explained as a result of Deloitte's misconduct. As the circuit court found, there is no issue as to whether Deloitte's misconduct prejudiced Chevron. Thus, we need not reach this issue.

Besides asking us to require prejudice, Deloitte asks us to adopt other prerequisites to imposing judgment as a sanction in cases such as this. Deloitte asks us to require a party seeking judgment as a sanction after a verdict has been returned to establish misconduct by clear and convincing evidence and to show that the misconduct prevented the complaining party from fully and fairly presenting its case. *See Anderson v. Cryovac, Inc.,* 862 F.2d 910, 926 (1st Cir. 1988); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978). Again, we think there is no question that Deloitte's misconduct prevented Chevron from fully and fairly presenting its case, and we do not reach this issue.

Deloitte argues that there was no misconduct in this case. We disagree. We have examined the record in regard to each of the events the circuit judge cited in her decision and have examined the record in regard to other events. We have concluded that Deloitte's conduct was unprofessional, repeated, and egregious. We are not persuaded by Deloitte's explanations of these events. There is no clear and justifiable excuse for them.

The court characterized Deloitte's disregard of its orders as "repeated and flagrant." We agree. The court sanctioned Deloitte four times for discovery disputes. Deloitte violated the sequestration order, mischaracterized the contents of exhibits, intentionally misrepresented the availability of a witness, and made improper comments and argument in front of the jury.

Besides revealing a cavalier attitude toward the court and a callous disregard of its warnings and orders, this conduct reveals a violation of one of the most basic ethical precepts under which attorneys operate. When new attorneys take the Attorney's Oath before this court, they take an oath that they will "employ, for the purpose of maintaining the causes confided to [them], such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law . . .." Deloitte's intentional misrepresentation of Mr. Nelson's availability violated the Attorney's Oath. This conduct also violated Supreme Court Rule 20:3.3 which requires candor toward the court. At the very least, part of the remainder of the Deloitte misconduct we have discussed ran afoul of Supreme Court Rule 20:3.4's requirement of fairness to the opposing party and counsel.

Deloitte's explanations for these events boil down to implying that the circuit court was wrong, saying Chevron is attempting to transform its own questionable conduct into Deloitte's misconduct, and saying Chevron's own improper tactics prompted Deloitte's actions. We reject these explanations.

A fine line may often divide proper advocacy from improper conduct. Yet, the conduct of Deloitte's counsel far exceeded the proper bounds of advocacy. True, this was a somewhat complex matter. However, Deloitte's counsel was not a novice making mistakes in good faith. Deloitte's counsel was an experienced litigator.

Any of the incidents we have reviewed in and of themselves may not justify imposing judgment as a sanction. However, taken as a whole there is no question that they do. We hold that it is proper to enter judgment as a sanction. We find this holding professionally distasteful,

yet necessary. We caution that attorneys should not view this holding as a sign to begin trying each other instead of their cases. Indeed, such conduct is itself improper if not justified by egregious circumstances such as those present in this case.

There remains the question of the amount of damages. The jury found that Chevron's damages on the claim of negligence in the audit were $715,000. However, the jury concluded that Deloitte did not negligently perform the audit. The jury answered "N/A" in response to the questions of what damages would compensate Chevron for intentional misrepresentation and negligent misrepresentation. In its oral decision on motions after verdict, the circuit court said that the evidence was "clear and convincing" that Chevron sustained a loss of $1,646,106 because of credit shipments. The $1,646,106 figure contained $676,000 in interest. The court apparently arrived at the $1,646,106 figure based on invoices Chevron had sent to AFSCO. The invoices contained a reference to 18% interest.

The court of appeals concluded that issues of fact had been raised regarding damages and remanded for a determination on damages. *Chevron,* 168 Wis. 2d at 342. Additionally, the court of appeals concluded that there had been a genuine dispute over damages throughout the trial and that, therefore, on remand an award of prejudgment interest would not be appropriate. *Id.*

██

We have concluded that the matter of the amount of damages is to be treated as it is in typical default judgment cases. *See generally Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 478 n.5, 326 N.W.2d 727 (1982); *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 651–53, 360 N.W.2d 554 (Ct. App. 1984). Because Deloitte has challenged the amount awarded and because there are

genuine issues of fact remaining regarding damages, we remand for a hearing on damages.

We briefly address two additional issues. The parties have raised the issue of the proper measure of damages. Our cases establish that consequential damages are available in both intentional and negligent misrepresentation cases. *Gyldenvand v. Schroeder,* 90 Wis. 2d 690, 698, 280 N.W.2d 235 (1979); *D'Huyvetter v. A.O. Smith Harvestore,* 164 Wis. 2d 306, 324, 475 N.W.2d 587 (Ct. App. 1991).

The second issue is preverdict interest. Because there are issues of fact regarding damages, the damages are not liquidated or liquidable. Therefore, Chevron may not recover preverdict interest. *See Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 608-09, 405 N.W.2d 327 (1987); *Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 771, 350 N.W.2d 127 (1984).

We conclude that the entry of judgment as a sanction for Deloitte's unprofessional, aggravated, persistent, and contemptuous disregard of the orders of the circuit court is appropriate.

*By the Court.*—The decision of the court of appeals is affirmed on other grounds, and the cause is remanded for a determination by the circuit court of the amount of damages to be awarded as a judgment against Deloitte.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I concur in the mandate, but I would affirm the decision of the court of appeals on different grounds than does the majority opinion. I agree with the court of appeals (which agreed with the circuit court) that judgment should be entered for Chevron on grounds of negligent

misrepresentation. The parties and the public would have benefitted had this court performed its law-clarifying function by reaching a decision on the important, complex substantive issues presented by this case.

The majority opinion orders the entry of a default judgment against Deloitte & Touche as a sanction for the misconduct of Deloitte's attorney. While the attorney's conduct may deserve censure and the imposition of penalties, I think the posture in which the case is before this court makes it inappropriate for the majority to order default judgment against Deloitte.

According to the majority opinion, the circuit court's decision about whether the circuit court exercised its discretion to enter judgment as a sanction for attorney misconduct was ambiguous. Majority op. at 945. Ordinarily if a circuit court does not exercise its discretion, or if we cannot determine how the circuit court exercised its discretion, this court remands the case to the circuit court. In this case the majority reviews the record *de novo* and thus supplants the circuit court's exercise of discretion with its own.[1]

---

[1] In reviewing a circuit court's exercise of discretion the appellate court asks whether the circuit court reached a decision which a reasonable court could have reached after examining the relevant facts, applying the proper law, and using a rational process to reach its conclusion. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982); *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). A circuit court in the exercise of its discretion may reasonably reach a conclusion which another judge or another court might not reach.

Because the majority does not know how the circuit court exercised its discretion, the majority opinion examines the record and concludes that "*even under* a *de novo* standard of review, the entry of judgment as a sanction is appropriate." (Majority op. at 946) (emphasis added.) The majority's analysis overlooks the fact that its *de novo* standard accords significantly less deference to

I do not find any ambiguity in the circuit court's decision. The circuit court clearly declined to award judgment as a sanction for attorney misconduct.

Chevron moved for judgment as a sanction for attorney misconduct on the *intentional misrepresentation* claim only; no such motion was made on the *negligent misrepresentation* claim. The circuit court carefully treated the motions on the claims of *negligent misrepresentation* and *intentional misrepresentation* separately in its decision.

The circuit court first granted Chevron's motion for judgment notwithstanding the verdict on the negligent misrepresentation claim based on the evidence on that issue.[2] Second, the circuit court reviewed the evidence on the intentional misrepresentation claim and awarded judgment to Chevron. In concluding this part of the decision, the circuit court stated its intention to "clarify that the rulings made in this decision today are based on the record in this case and on the evidence presented." (R. 275:6).[3] Third, the circuit court turned to Chevron's *motion to award judgment on the intentional misrepresentation claim as a sanction for attorney misconduct*

to the circuit court's decision than does the erroneous exercise of discretion standard. If, for example, the circuit court's "ambiguous decision" was not to award judgment as a sanction, the majority opinion is reversing the circuit court's decision without giving it any deference.

[2] The circuit court clearly stated that the issue of negligent misrepresentation should not have gone to the jury and that Deloitte was "negligent as a matter of law. . . . Thus, judgment notwithstanding the verdict will be granted on plaintiff's claim of negligent misrepresentation." (R. 275:3).

[3] The circuit court continued, saying: "Judgment on the claims of negligent misrepresentation and intentional misrepresentation should be granted because the evidence unequivocally supports this ruling." (R.275:6).

953

and declined to order judgment on this basis. The circuit court commented that "entry of judgment [on the intentional misrepresentation claim] as a sanction for counsel's misconduct would also be appropriate on this record. . . . I recognize that granting judgment *would have been* a very drastic remedy, but drastic remedies are necessitated by repeated and flagrant disregard for court orders." (emphasis added) (R. 275:6-7). The words the circuit court used are "*would have been,*" meaning that the circuit court did not grant this drastic remedy.[4]

If I were to agree with the majority that it should exercise the circuit court's discretion, I would direct the circuit court on remand to determine whether damages, including perhaps reasonable attorney fees, should be assessed against Deloitte, Deloitte's attorney, or both. *Johnson v. Allis Chalmers Corp.,* 162 Wis. 2d 261, 287, 470 N.W.2d 859 (1991) (Abrahamson, J. concurring).

For the reasons set forth, I concur in the mandate.

---

[4] The circuit court concluded its entire decision saying "But I think, when sifting through all the evidence, sifting through all of the sound and fury and all of the arguments back and forth, this Court has a responsibility to look very carefully at the evidence as presented and to very carefully track the law as it's been established and as it applies to this case. And, based on the evidence in this case and based on the law as it applies to the evidence in this case, this Court is granting plaintiff's motion for judgment." (R.275:6-9).

Further, the circuit court's order on the post-verdict motions and the order for judgment make no reference to judgment being ordered as a sanction for attorney misconduct. (R. 204:1-2).