GENEVA NATIONAL COMMUNITY ASSOCIATION, INC., and
Geneva National Condominium Master Association,
Inc., Plaintiffs-Counter-Defendants-Respondents-
Cross-Appellants,

v.

Michael E. FRIEDMAN and Christine J. Friedman,
Defendants-Counter-Plaintiffs-Appellants-Cross-
Respondents.

Court of Appeals

*No. 98–1010. Submitted on briefs April 26, 1999.—Decided
June 2, 1999.*

(Also reported in 598 N.W.2d 600.)

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

On behalf of the plaintiffs-counter-defendants-respondents-cross-appellants, the cause was submitted on the briefs of *Christopher A. Cieniawa* and *Mark J. Weidman* of Chicago.

On behalf of the defendants-counter-plaintiffs-appellants-cross-respondents, the cause was submitted on the brief of *Theodore N. Johnson* of *Godfrey, Neshek, Worth, Leibsle & Conover, S.C.* of Elkhorn.

Before Snyder, P.J., Nettesheim and Wilk,[1] JJ.

NETTESHEIM, J. This is an appeal and cross-appeal in a condominium foreclosure case. Geneva National Community Association, Inc., and Geneva National Condominium Master Association, Inc. (the Association), sought foreclosure based upon the failure of Michael E. and Christine J. Friedman to pay their share of the condominium's common expenses. After the Friedmans failed to comply with the Association's discovery requests and an order compelling discovery, the trial court struck the Friedmans' answer and counterclaim and granted a default judgment to the Association. The Friedmans appeal this ruling. We affirm. We also affirm the trial court's order rejecting the Friedmans' postjudgment motion for reconsideration.

---

[1] Circuit Judge S. Michael Wilk is sitting by special assignment pursuant to the Judicial Exchange Program.

Alternatively, the Friedmans contend that the default judgment is defective because it fails to include all the recitals required by § 846.10(1), STATS. Under the facts of this case, we hold that the judgment was not required to recite all of the provisions of the statute.

The Association cross-appeals a postjudgment order granting the Friedmans a twelve-month period of redemption. We hold that the trial court properly granted this period of redemption pursuant to §§ 703.16(8) and 846.10(2), STATS.

In summary, we affirm the judgment and the postjudgment orders. We will recite the relevant facts as we discuss the issues.

## THE FRIEDMANS' APPEAL

### SANCTION-BASED DEFAULT JUDGMENT

#### FACTS AND PROCEDURAL HISTORY

The Association commenced this foreclosure action against the Friedmans on May 19, 1997. The complaint alleged that the Friedmans owned Unit 12–50 of the Association's condominium and that they had failed to pay their proportionate share of common expenses incurred by the Association. The Association sought a judgment of foreclosure and other related relief. The Friedmans timely filed an answer and counterclaim.

On July 22, 1997, the Association served the Friedmans with interrogatories and a request for production of documents. The request sought these materials within thirty days. On August 27, after the thirty-day deadline had expired, the Friedmans' attorney, Christopher Cieniawa,[2] asked the Association's

---

[2] Cieniawa is an Illinois attorney who was permitted to appear pro hac vice in this matter.

attorney, Theodore Johnson, for an added two weeks to respond to the request. Johnson agreed.

However, the Friedmans did not respond within the added time agreed to by the Association. On September 30, 1997, more than sixty days after the initial request, the Association brought a motion to compel discovery. The motion was scheduled for October 30, 1997. Within one week after the filing of the motion to compel, the Friedmans provided responses to the Association's interrogatories, but they did not produce the requested documents.

While waiting for the hearing on the motion to compel, Johnson requested convenient dates from Cieniawa for the taking of Michael Friedman's deposition. Cieniawa instead told Johnson that he should provide a formal notice of deposition. Johnson did so by notice of deposition dated September 16, 1997, which scheduled Michael Friedman's deposition for October 7, 1997. Johnson scheduled the deposition to coordinate Friedman's deposition in another case so that Friedman, an Illinois resident, would need to make only one trip to Wisconsin for both depositions.

However, on October 2, 1997, only three working days before the scheduled deposition, Cieniawa sent a letter by facsimile to Johnson advising that other matters precluded his attendance at the deposition and that "a rescheduling of the deposition will be necessary." Johnson responded the same day by facsimile stating that he would not agree to a postponement of the deposition. Johnson noted, "You were given an opportunity to provide me with dates for the deposition and did not." Johnson also noted in his letter that the prior discovery responses were "completely nonresponsive" and that the Friedmans still had not provided the documents which the Association had requested.

Finally, Johnson warned Cieniawa that the Association would seek sanctions.

Johnson appeared at the scheduled deposition together with another member of his law firm. Neither Cieniawa nor Michael Friedman appeared.

This prompted a sanctions motion by the Association. The motion was scheduled at the same time as the Association's previously filed motion to compel. The Association's sanctions motion sought, among other relief, an order barring the Friedmans from producing evidence in support of their counterclaim, striking the Friedmans' answer and a default judgment.

The hearing on the Association's motions was heard by Judge James L. Carlson.[3] Following the hearing, Judge Carlson issued an order granting the Association's motion to compel. The order directed the Friedmans to provide supplemental answers to the Association's interrogatories, to comply with the Association's request for documents and to pay attorney's fees and costs in the amount of $351. These actions were to be performed within five days. The order also directed Michael Friedman to submit to a deposition within thirty days. The order did not expressly grant or deny the Association's motion for sanctions, but it did state:

> **IT IS FURTHER ORDERED** that in the event the Defendants do not comply with all of the orders as stated herein that the court will consider further sanctions including but not limited to striking the Defendants' pleadings and default judgment.

The Friedmans do not quarrel with Judge Carlson's order on this appeal.

---

[3] The Friedmans have not provided us with a transcript of this hearing.

On November 14, 1997, Michael Friedman submitted to a deposition. However, the Friedmans did not otherwise comply with the balance of Judge Carlson's order to compel. On December 16, 1997, Johnson wrote to Cieniawa complaining about this state of affairs. Noting that the five-day deadline imposed by Judge Carlson had long expired, Johnson stated he would extend the deadline for one additional week. Cieniawa did not respond. On January 5, 1998, Johnson again wrote to Cieniawa noting that more than two weeks had passed since his previous letter. Again, Cieniawa did not respond.[4]

This prompted a further motion for sanctions by the Association which was heard by Judge Michael S. Gibbs. It is Judge Gibbs's rulings that we review on appeal. At the hearing, after listening to the arguments of both attorneys, Judge Gibbs found that the Friedmans "have willfully failed to comply with the order of Judge Carlson." Judge Gibbs struck the Friedmans' pleadings and granted default judgment to the Association.[5] Later, Judge Gibbs denied the Friedmans' motion for reconsideration. At this hearing, Judge Gibbs described the Friedmans' conduct as "dilatory" and "egregious and . . . made in bad faith and for the purpose of delay."

The Friedmans appeal from the judgment and the order denying reconsideration.

## DISCUSSION

Section 804.12(4), STATS., provides that a court may impose the sanctions recognized by

---

[4] Later, the Friedmans moved for summary judgment.

[5] Thus, Judge Gibbs was not required to address the motions for summary judgment which both parties had previously filed.

§ 804.12(2)(a)1, 2 and 3 for a party's failure to appear at a duly noticed deposition, for failure to respond to duly served interrogatories and for failure to respond to a duly served request for production of documents. Such sanctions include:

1. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

2. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence;

*3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.*

*Id.* (emphasis added).

A trial court's decision to dismiss a cause of action or to strike a pleading as a sanction is discretionary and will not be disturbed unless the party claiming to be aggrieved by the decision establishes that the trial court has erroneously exercised its discretion. *See Milwaukee Constructors II v. Milwaukee Metro. Sewerage Dist.*, 177 Wis. 2d 523, 529, 502 N.W.2d 881, 883 (Ct. App. 1993). A discretionary decision will be upheld if the trial court has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See id.* at 529–30, 502 N.W.2d at 883. The question is not whether this court as an origi-

nal matter would have imposed the sanction. Rather, it is whether the trial court erred in the exercise of its discretion in doing so. *See id.* at 530, 502 N.W.2d at 883.

However, these severe sanctions should not be employed for violation of "trivial procedural orders." *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 275, 470 N.W.2d 859, 864 (1991). Instead, because of the harshness of the result, these sanctions should be used only in cases of "egregious conduct" on the part of the noncomplying party. *See id.* In addition, the sanction of dismissal or striking a pleading is a misuse of discretion if the aggrieved party can establish a clear and justifiable excuse for the delay. *See id.* at 273, 470 N.W.2d at 863.

In this case, we count ten instances of dilatory and obstructive conduct on the part of the Friedmans or their attorney which frustrated what should have been a routine discovery process. First, the Friedmans failed to timely respond to the Association's interrogatories and request for production of documents within the thirty days recited in the request. Second, after Johnson agreed to give the Friedmans an additional two weeks, the Friedmans still had not complied with the request, forcing the Association to file a motion to compel. Third, Cieniawa spurned Johnson's attempts to arrange convenient dates for the taking of Michael Friedman's deposition. Instead, Cieniawa told Johnson to provide formal notice of the deposition. Fourth, after Johnson complied and formally noticed the deposition giving three weeks advance notice, Cieniawa summarily notified Johnson a mere three working days in advance of the deposition that he was unavailable and that he would not appear. Fifth, after Johnson notified Cieniawa that he would not agree to rescheduling the

deposition, Michael Friedman failed to appear at the deposition. Sixth, the Friedmans failed to comply with Judge Carlson's order to compel directing them to provide supplemental interrogatory responses within five days. Seventh, the Friedmans failed to comply with Judge Carlson's order to compel directing them to produce the documents requested by the Association within five days. Eighth, the Friedmans failed to comply with Judge Carlson's order to compel directing payment of the attorney's fees and costs within five days. Ninth, Cieniawa failed to respond to Johnson's December 16, 1997 letter complaining about this noncompliance but nonetheless extending the deadline by an additional one week. Tenth, Cieniawa failed to respond to Johnson's further letter of complaint of January 5, 1998.

Moreover, this record reveals multiple advance warnings to the Friedmans and Cieniawa about the likely consequences if their conduct continued. When Cieniawa advised that he would not attend the deposition, Johnson warned in his response letters of October 2 and October 6, 1997, that the Association would seek sanctions if the Friedmans persisted in their refusal to comply with the discovery requests. And, in fact, the Association's motion for sanctions expressly sought an order striking the Friedmans' counterclaim and granting a default judgment. Most importantly, Judge Carlson's order to compel granted the Friedmans a reprieve from the Association's concurrent motion for sanctions by warning the Friedmans that if they did not comply with the order to compel, *"the court will consider further sanctions including but not limited to striking the Defendants' pleadings and default judgment."* (Emphasis added.) Finally, Johnson's December

16, 1997 letter threatened to refer the matter back to the trial court.

In granting the Association's sanctions motion, Judge Gibbs aptly noted that "Judge Carlson's order on November 7 was very clear. It also set forth a very clear warning what would happen or what could happen in the event there was a failure to comply with his order." Judge Gibbs found the Friedmans' conduct to be willful. We agree. On the Friedmans' motion for reconsideration, Judge Gibbs detailed, as we already have, the persistent pattern of conduct by the Friedmans and Cieniawa. The judge labeled the conduct "dilatory" and "egregious and . . . made in bad faith and for the purpose of delay." Again, we fully agree. In addition, the record shows no "clear and justifiable" excuse for the conduct. *See Johnson*, 162 Wis. 2d at 273, 470 N.W.2d at 863 (quoted source omitted).[6]

The conduct of Cieniawa is especially offensive when compared to that of his adversary, Johnson. When Cieniawa sought an extension of the deadline for responses to the Association's interrogatories and request for documents, Johnson readily agreed. We note that this extension was granted after the initial deadline *had already expired*. When Johnson asked Cieniawa for convenient dates for Michael Friedman's deposition, Cieniawa "stiffed" Johnson by telling him to

---

[6] At the reconsideration hearing, Judge Gibbs made this finding as to the Friedmans' failure to timely pay the costs and attorney's fees. However, we read the judge's remark as aimed at the entire panoply of the Friedmans' conduct since the court addressed the totality of the conduct at the hearing. Moreover, even without this express finding, Judge Gibbs's finding that the Friedmans' conduct was dilatory, egregious and taken in bad faith is tantamount to a determination that the conduct was neither justified nor excused.

provide a formal notice of deposition. Johnson then coordinated the deposition with another case so that Friedman would not have to make separate trips to Wisconsin. Cieniawa responded by summarily attempting to cancel the deposition with only three working days advance notice to Johnson. Even after the Friedmans violated the five-day limit of Judge Carlson's order to compel, Johnson continued to offer Cieniawa and the Friedmans additional time to respond. Cieniawa responded with silence.

Conduct such as Cieniawa's "harms not only the parties, but also the judicial system's effectiveness." *Aspen Servs., Inc. v. IT Corp.*, 220 Wis. 2d 491, 498, 583 N.W.2d 849, 852 (Ct. App. 1998) (quoted source omitted). Supreme Court Rule 20:3.4 provides, in part, that a lawyer shall not: "(a) unlawfully obstruct another party's access to evidence"; "(c) knowingly disobey an obligation under the rules of a tribunal"; "(d) in pretrial procedures, . . . fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Cieniawa violated these rules.

In addition, Cieniawa's conduct violated the Standards of Courtesy and Decorum for the Courts of Wisconsin. These standards provide, in part:

> (1) [L]awyers . . . shall at all times do all of the following:
>
> (a) Maintain a cordial and respectful demeanor and be guided by a fundamental sense of integrity and fair play in all their professional activities.
>
> (b) Be civil in their dealings with one another . . . and conduct all court and court-related proceedings, whether written or oral, *including discovery proceedings,* with civility and respect for each of the participants.

. . . .

(d) Abstain from any conduct that may be characterized as uncivil . . . or *obstructive*.

. . . .

(g) In scheduling all hearings, meetings and conferences, be considerate of the time schedules of the participants and grant reasonable extensions of time when they will not adversely affect the court calendar or clients' interests.

. . . .

(3) Lawyers shall do all of the following:

(a) Make all reasonable efforts to reach informal agreement on preliminary and procedural matters.

. . . .

(c) Abstain from pursuing or opposing discovery arbitrarily or for the purpose of harassment or undue delay.

(d) If an adversary is entitled to assistance, information or documents, provide them to the adversary without unnecessary formalities.

SCR 62.02 (emphasis added).

While the Standards of Courtesy and Decorum are not enforceable by the Board of Attorneys Professional Responsibility, *see* SCR 62.01, their violation can nonetheless carry serious consequences to the merits of a given case. In *Aspen Services*, this court cited to the rules of professional conduct and the standards of decorum in affirming a trial court's denial of a request for significant attorney's fees. *See Aspen Services,* 220 Wis. 2d at 497, 583 N.W.2d at 852 ("[Aspen] is mistaken in its belief that the Rules in SCR 62 and SCR 20 cannot be the basis for imposing a sanction for incivility during litigation.").

The same holds true here. Cieniawa's conduct violated some or all of the rules of professional conduct and the standards of decorum which we have cited—particularly those relating to discovery. Although Judge Gibbs did not cite to these rules or standards, they additionally support his ruling. *See Wester v. Bruggink*, 190 Wis. 2d 308, 317, 527 N.W.2d 373, 377 (Ct. App. 1994) ("[W]hen the trial court's holding is correct, we may uphold on grounds other than those used by the trial court.").

This case presents the best and worst of lawyering. Johnson's conduct was in keeping with the highest standards of professionalism. He accommodated Cieniawa's request for an enlargement of the time for responding to the initial request for interrogatories and production of documents. He attempted to arrange mutually acceptable dates for Michael Friedman's deposition. He unilaterally extended additional time for the Friedmans to supply the supplemental interrogatory responses and production of documents long after the Friedmans were in default under Judge Carlson's order to compel.

Cieniawa responded with intransigence or silence. He acted unprofessionally, using the law as a tool to obstruct and delay. His conduct demeaned the profession and himself. As with society in general, we lamentably see an increasing amount of incivility in the practice of law. As a result, all courts must remain vigilant to check this kind of conduct at the outset and to sanction it within the bounds of proper discretion. We also observe that lawyers have a duty to discipline themselves. While our profession has an abundance of rules and standards governing lawyer conduct, the fact remains that "[t]he legal profession is largely self-gov-

erning." SCR 20 (Preamble: A Lawyer's Responsibilities).

In this case, both attorneys zealously represented their clients. However, zealous advocacy has its limits—a fact lost on an increasing number of lawyers. In the final analysis, Cieniawa's undisciplined zeal and purposeful intransigence in this case cost his clients their day in court—a consequence which lawyers should also bear in mind.

■ We hold that Judge Gibbs did not err in the exercise of discretion by striking the Friedmans' pleadings and granting default judgment to the Association.[7]

## SUFFICIENCY OF THE DEFAULT JUDGMENT

Next, the Friedmans complain that the judgment fails to comport with the requirements of § 846.10(1), STATS., governing foreclosure judgments.[8] This statute provides:

---

[7] The Friedmans also contend that Judge Gibbs erred because the Association's motion for sanctions was based only on their failure to pay the attorney's fees and costs previously awarded by Judge Carlson. While that narrow reading of the Association's motion is technically correct, the Friedmans overlook that the motion cited to all of the provisions of Judge Carlson's order. Moreover, the exhibits attached to, and in support of, the motion included Johnson's letters complaining about all of the Friedmans' failings under Judge Carlson's order—not just the nonpayment of the fees and costs. Finally, the hearing on the motion before Judge Gibbs explored all of the intransigent conduct on the part of the Friedmans and Cieniawa. We reject the Friedmans' argument on this point.

[8] The Association's argument on this issue includes a claim that the Friedmans waived their objections because they did not object to the judgment within the five-day limit imposed by the Walworth County Circuit Court Local Rules. A local rule may

If the plaintiff recovers the judgment shall describe the mortgaged premises and fix the amount of the mortgage debt then due and also the amount of each instalment thereafter to become due, and the time when it will become due, and whether the mortgaged premises can be sold in parcels and whether any part thereof is a homestead, and shall adjudge that the mortgaged premises be sold for the payment of the amount then due and of all instalments which shall become due before the sale, or so much thereof as may be sold separately without material injury to the parties interested, and be sufficient to pay such principal, interest and costs; and when demanded in the complaint, direct that judgment shall be rendered for any deficiency against the parties personally liable and, if the sale is to be by referee, the referee must be named therein.

*Id.* In addition, § 840.07, STATS., governing default judgments provides:

No default judgment may be granted unless evidence supporting the court's findings and conclusions is in the record.

---

not conflict with a state statute. *See Community Newspapers, Inc. v. City of West Allis*, 158 Wis. 2d 28, 32–33, 461 N.W.2d 785, 787 (Ct. App. 1990). However, a local rule may impose a more restrictive time limit than an equivalent state statute. *See id.* at 32, 461 N.W.2d at 787. Here, the parties do not alert us to any statute which imposes a time limit for objecting to a proposed judgment. To that extent, the local rule may be valid. But in this case, the Association seeks to invoke a local rule which imposes a time limit to override a state statute which substantively decrees what a foreclosure judgment must recite. Whether a local rule may be employed to that end is questionable. However, we need not reach this question since we nonetheless agree with the Association's argument on the merits.

In this case, after Judge Gibbs granted a default judgment to the Association, Johnson correctly observed that the Association would have to provide the court with evidence in support of its claim. He proposed that he do so by affidavit. The Friedmans did not object and Judge Gibbs approved this procedure. Thereafter, Johnson submitted his own affidavit and that of Scott Lowell, the president of the Association. These affidavits set out the amount due and owing from the Friedmans for past due condominium assessments, late charges and attorney's fees, all in the amount of $34,009.50. Attached to Lowell's affidavit was a breakdown and summary of the assessments and charges.

We begin by noting that § 840.07, STATS., does not expressly require a hearing. Rather, the statute requires that "evidence supporting the court's findings and conclusion is in the record." *Id.* While this evidence will oftentimes be produced via a formal default judgment hearing, the statute envisions that the evidence can exist without such a hearing. Since the Friedmans did not object to the manner in which the Association proffered its evidence, we conclude that the issue narrows to whether the judgment satisfied the requirements of § 846.10(1), STATS.

Based on the Association's affidavits, Judge Gibbs entered findings of fact, conclusions of law and a default judgment. As pertinent to § 846.10(1), STATS., the judgment recites the amount due ($34,009.50); describes the property; allows recovery for any additional assessments, attorney's fees, interest and costs which become due prior to the sale; and grants a deficiency judgment in the event the sale proceeds are insufficient. However, the judgment is silent as to the remaining matters covered by the statute. Nonethe-

less, we conclude that these omissions are not fatal to the judgment.

■

Because this is not a mortgage foreclosure case, but rather a foreclosure based on the Friedmans' failure to pay condominium assessments and charges, we observe that certain provisions of § 846.10(1), STATS., cannot be sensibly applied to this case. For instance, the breakdown of the Friedmans' account shows that the past monthly assessments were varying amounts, not a constant fixed amount as with a conventional mortgage note. Thus, it was not practical or possible for the judgment to state with certainty "the amount of each instalment thereafter to become due, and the time when it will become due." Section 846.10. We therefore hold that this omission does not defeat the validity of the judgment. Likewise, since the property involved is a condominium unit, it stands to reason that the property cannot be sold in parcels. Therefore, the failure of the judgment to so state or to further address a possible sale of a portion of the property also does not defeat the validity of the judgment.

That leaves only the failure of the judgment to state whether the property is the Friedmans' homestead. We first observe that neither the Association nor the Friedmans ever claimed that the condominium was the Friedmans' homestead. More importantly, at the reconsideration hearing, Judge Gibbs observed: "[T]here is nothing in front of me that indicates that this property . . . *was used for any purposes other than that of a second home for the owner*." (Emphasis added.) This observation was correct. At his deposition, Michael Friedman expressly admitted that the condominium was a second home for the family. A person may only have one homestead at a time. *See Moore v.*

*Krueger*, 179 Wis. 2d 449, 458, 507 N.W.2d 155, 159 (Ct. App. 1993).

Since it was established that the property was not the Friedmans' homestead, we must next address whether the judgment's failure to recite this fact renders the judgment unenforceable. Section 846.10(1), STATS., does not state that a foreclosure judgment must recite that the property is not a homestead. Rather, the statute says that the judgment must recite "whether any part thereof is a homestead." *Id.* We conclude that when the evidence establishes that the property is not a homestead, it follows that the judgment need not state whether any part thereof is a homestead. The obvious purpose of the homestead recital is to protect the mortgagor's homestead exemption if such applies.[9] That purpose does not exist in a case such as this where the entire property is not homestead property in the first instance.

## THE ASSOCIATION'S CROSS-APPEAL

The Association cross-appeals Judge Gibbs's postjudgment order granting the Friedmans a twelve-month period of redemption.[10]

Section 703.16(8), STATS., provides that "[a] lien may be enforced and foreclosed by an association . . . in the same manner, and subject to the same requirements, as a foreclosure of mortgages on real property in

---

[9] The homestead recital in a foreclosure judgment also serves to instruct "whether the part of the homestead premises not included in the exempt homestead can be sold separately therefrom." Section 846.11, STATS. That purpose is not served in a case such as this where the entire property is not homestead property.

[10] This order was entered following a hearing on the Friedmans' motion to quash the scheduled sale of the property.

this state." Section 846.10(2), STATS., grants a twelve-month period of redemption for a "one- to 4-family residence that is owner-occupied at the commencement of the foreclosure action."

■ We do not think this statutory language and the legislative intent could be made any clearer. Condominium foreclosures are governed by the same rules applicable to mortgage foreclosures. *See* § 703.16(8), STATS. One of the rules of mortgage foreclosures is that a twelve-month period of redemption applies to a one-to four-family residence which is owner-occupied when the foreclosure action is commenced. *See* § 846.10(2), STATS. Judge Gibbs correctly construed these statutes.

The Association contends, however, that since condominiums are a creature of statute, the legislature would have expressly recited the twelve-month period of redemption in ch. 703, STATS., governing condominiums. But the legislature has functionally accomplished the same result by invoking in § 703.16(8), STATS., the rules otherwise applicable to real estate foreclosures. As noted, those rules include the twelve-month period of redemption set out in § 846.10(2), STATS.

The Association also cites to *City Lumber & Supply Co. v. Fisher*, 256 Wis. 402, 41 N.W.2d 285 (1950), a mechanic's lien foreclosure case. There, in support of a request for a period of redemption, the property owner noted that the mechanic's lien statute provided that the general statutory provisions governing foreclosure of real estate mortgages should apply and that the latter statutes provided a period of redemption. *See id.* at 405, 41 N.W.2d at 287. However, the supreme court noted that the mechanic's lien statute was qualified by further language stating, "as far as applicable unless otherwise provided in this chapter." *Id.* The court then

observed that another provision of the mechanic's lien statute expressly provided that such foreclosure sales "shall be absolute and without redemption." *Id.* at 404, 41 N.W.2d at 286. Thus, the supreme court held that there is no right of redemption from a sale in proceedings to enforce a mechanic's lien. *See id.* at 407, 41 N.W.2d at 288.

Unlike *City Lumber*, in this case there is no statutory provision which creates an exception to the general right of redemption set out in § 846.10(2), STATS. The rationale of *City Lumber* does not support the Association's argument. To the contrary, the case supports the Friedmans' position.

We affirm the order granting the Friedmans a twelve-month period of redemption.

## CONCLUSION

We hold that Judge Gibbs did not err in the exercise of discretion in striking the Friedmans' pleadings and in granting a sanction-based default judgment to the Association. We further hold that the judgment is not rendered unenforceable because it did not recite all of the provisions of § 846.10(1), STATS. Finally, we hold that the Friedmans were properly granted a twelve-month period of redemption.

*By the Court.*—Judgment and orders affirmed.